UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

O'ROURKE MARINE SERVICES L.P.,
L.L.P.,

                    Plaintiff,

              - against -

M/V COSCO HAIFA, IMO NO. 9484338, her
engines, apparel, furniture, equipment,
appurtenances, tackle, etc., *in rem*,

              - and -

M/V COSCO VENICE, IMO NO. 9484405,
her engines, apparel, furniture, equipment,
appurtenances, tackle, etc., *in rem*,

                    Defendants.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/8/16

**OPINION AND ORDER**

**15-cv-2992 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On April 5, 2015, O'Rourke Marine Services L.P., L.L.P.

("O'Rourke") brought an arrest action *in rem* against certain vessels owned by the

China Ocean Shipping Company ("COSCO") related to certain supplies of

gasoline fuel (referred to as "bunkers") provided by O'Rourke for which it has not

been paid. O'Rourke now brings this motion for summary judgment, arguing that

it holds a lien against the M/V COSCO Haifa and M/V COSCO Venice (together

the "COSCO Vessels") under the Commercial Instruments and Maritime Lien Act

("CIMLA").  Both COSCO and ING Bank N.V. ("ING") oppose this motion.

COSCO argues that O'Rourke has no lien, and ING argues both that O'Rourke has

no lien and that ING, as assignee for O.W. Far East (Singapore) Pte, Ltd. ("O.W.

Far East") has a lien against the COSCO vessels under CIMLA.  For the following

reasons, plaintiff's motion is DENIED.[1]

## I.   BACKGROUND[2]

### A.   Overview

          This action is one of numerous actions related to the 2014 collapse of

O.W Bunker, formerly one of the largest maritime fuel providers in the world.  The

circumstances of this action are similar to those of other lawsuits in the United

States and throughout the world: (1) an owner or charterer of a vessel (here,

COSCO) contracted with an O.W. Bunker entity (here O.W. Far East) to supply

bunkers; (2) the O.W. Bunker entity subcontracted with a third party (here,

---

[1]     Plaintiff's summary judgment brief also raises arguments in support of unpled claims for breach of contract and unjust enrichment. "A complaint cannot be amended merely by raising new facts and theories [in briefing], and hence such new allegations and claims should not be considered in resolving the [summary judgment] motion." *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 526 (S.D.N.Y. 2015).  For this reason I decline to address the unpled claims.

[2]     Plaintiff did not respond to either COSCO or ING's Rule 56.1 Statements in its reply.  I therefore consider the facts in those submissions to be undisputed for the purposes of this motion.

O'Rourke) to actually supply the bunkers; and (3) the O.W. Bunker entity declared bankruptcy without paying the physical supplier.  The vessel owners and charterers are now facing multiple claims for payment for the same bunkers from both the physical supplier and from the O.W. Bunker entity, or the entity to which O.W. Bunker's interest has been assigned.

### B.     The Transactions at Issue

Two COSCO entities, COSCO Venice Maritime Ltd. and COSCO Haifa Maritime Ltd., are the registered owners of the COSCO Vessels in this action.[3]  These entities submitted orders for bunkers to a separate COSCO entity, COSCO Petroleum Pte. Ltd. ("COSCO Petroleum"), which in turn authorized a corporate affiliate, Chimbusco Americas, Inc. ("Chimbusco"), to enter into a contract for the supply of bunkers.[4]  Chimbusco contracted with O.W. Far East.[5] The contracts list O.W. Far East as the seller, and NuStar Energy Services, Inc. as the physical supplier of the bunkers.[6]  O'Rourke is not listed as the supplier in

---

[3]     *See* ING Bank's Response to O'Rourke's Rule 56.1 Statement and Counterstatement of Material Facts ("ING 56.1") ¶ 1.

[4]     *See id.* ¶¶ 2-4.

[5]     *See id.* ¶ 5.

[6]     *See id.* ¶¶ 6, 8.  I note that NuStar has asserted separate claims in the Southern District of Texas for the petroleum products it supplied to the COSCO Vessels.  *See NuStar Energy Servs., Inc. v. M/V COSCO Auckland et al.*, Civ. Act.

either contract.[7]  The supply chains for each vessel are as follows:

### 1.  M/V COSCO Venice

On October 20, 2014, COSCO Venice Maritime Ltd. submitted an order for the supply of bunkers to COSCO Petroleum.[8]  COSCO Petroleum, through its authorized corporate affiliate Chimbusco, contracted with O.W. Far East for the supply of bunkers.[9]  O.W. Far East thereupon subcontracted with O.W. USA to supply the bunkers at the Port of Houston.[10]  O.W. USA subcontracted with O'Rourke to physically supply the bunkers.[11]  No one from O'Rourke communicated in any way with any COSCO party in connection with the purchase of bunkers.[12]

The bunkers were delivered on October 27, 2014 at the Port of

---

No. 14-cv-3648, Dkt. No. 57 (transcript of motion hearing and oral order denying plaintiff's motion for summary judgment).

[7]     See ING 56.1  ¶ 7.

[8]     See id. ¶ 12.

[9]     See id. ¶ 13.

[10]    See id. ¶ 14.

[11]    See id. ¶ 15.

[12]    See id. ¶ 17.

Houston.[13]  On October 30, 2014, O'Rourke submitted a bunker delivery receipt to O.W. USA.[14]  O'Rourke invoiced O.W. USA for $121,296.27.[15]  O.W. USA invoiced O.W. Far East for the same amount.[16]  O.W. Far East then invoiced Chimbusco for $125,740.98.[17]  To date, this invoice has not been paid.[18]

### 2.    M/V COSCO Haifa

The supply chain for M/V COSCO Haifa is effectively identical to that of M/V COSCO Venice.  COSCO Haifa Maritime Ltd. submitted an order to COSCO Petroleum, which contracted with O.W. Far East through Chimbusco.[19]  O.W. Far East then subcontracted with O.W. USA, which subcontracted in turn with O'Rourke.[20]  No one from O'Rourke communicated in any way with any COSCO party in connection with the purchase of bunkers.[21]  The bunkers were

---

[13]    *See id.* ¶ 18.

[14]    *See id.*

[15]    *See* Local Civil Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("O'Rourke 56.1") ¶¶ 1-2.

[16]    *See* ING 56.1 ¶ 22.

[17]    *See id.*

[18]    *See* O'Rourke 56.1 ¶ 8.

[19]    *See* ING 56.1 ¶¶ 26-27.

[20]    *See id.* ¶ 28.

[21]    *See id.* ¶ 30.

delivered on November 1, 2014.[22]  On November 3, 2014, O'Rourke invoiced

O.W. USA for $122,457.85.[23]  O.W. USA then invoiced O.W. Far East for this

same amount.[24]  O.W. Far East then invoiced Chimbusco for $127,509.96.[25]  To

date, this invoice has not been paid.[26]

### C.      The Collapse of O.W. Bunker in November 2014

O.W. Bunker & Trading A/S, the parent of O.W. Far East,

commenced restructuring proceedings in Denmark in November 2014, shortly after

suffering a global collapse.[27]  Many other O.W. Bunker entities are bankrupt,

including O.W. Far East, which is undergoing insolvency proceedings in

Singapore.[28]

### D.      The Role of ING Bank

ING acts as the Security Agent for a $700,000,000 Multicurrency

Revolving Borrowing Base Facilities Agreement and related English Omnibus

---

[22]      *See id.* ¶ 31.

[23]      *See* O'Rourke 56.1 ¶ 3.

[24]      *See* ING 56.1 ¶ 33.

[25]      *See id.*

[26]      *See* O'Rourke 56.1 ¶ 8.

[27]      *See* ING 56.1 ¶¶ 36-37.

[28]      *See id.* ¶ 38.

Security Agreement, both dated December 19, 2013, entered into between ING and various O.W. Bunker entities, including O.W. Far East. [29] As security for its obligations under these agreements, O.W. Far East assigned, *inter alia*, all of its rights, title, and interest in Supply Receivables, as defined in the agreements, to ING.  These Supply Receivables include the receivables due to O.W. Far East in this case.[30]

## II.    LEGAL STANDARD

Summary judgment is appropriate where, "viewing the record in the light most favorable to the non-moving party . . . 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[31]  "In making this determination . . . we resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."[32]  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a

---

[29]     *See id.* ¶ 39.

[30]     *See id.* ¶¶ 40-42.

[31]     *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)) (quotation marks and citation omitted).

[32]     *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quotation marks and citation omitted).

reasonable jury could return a verdict for the nonmoving party."[33]

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact."[34]  To defeat a motion for summary judgment, the non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.'"[35]  "If the non-moving party has the burden of proof on a specific issue, the movant may satisfy its initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim."[36]

"'The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists.'"[37]

---

[33]      *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S.Ct. 2675 (2013) (quotation marks, citation, and alterations omitted).

[34]      *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[35]      *Robinson*, 781 F.3d at 44 (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).

[36]      *Chen v. New Trend Apparel*, 8 F. Supp. 3d 406, 430 (S.D.N.Y. 2014) (citing *Celotex v. Catrett*, 477 U.S. 317, 325 (1986) (further citations omitted)).

[37]      *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).

"'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[38]

## III.   APPLICABLE LAW

Maritime liens are "disfavored by the law,"[39] and it is a bedrock principle of admiralty that such liens can arise only by operation of law and not by agreement of the parties.[40]  Statutory provisions creating maritime liens are to be accorded a "technical and precise" interpretation.[41]  One such lien is the maritime lien for necessaries, set forth at sections 31301 to 31343 of Title 46 of the United States Code.  In order to assert a cognizable maritime lien for necessaries, a party must show that (1) it furnished repairs, supplies, or other necessaries, (2) to any vessel, (3) upon the order of the owner or of the person authorized by the owner.[42]

---

[38]     *Crawford*, 758 F.3d at 486 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[39]     *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 982 F.2d 765, 768 (2d Cir. 1992).

[40]     *See, e.g.*, *Bird of Paradise*, 72 U.S. 545, 555 (1866) (maritime liens exist "independently of the agreement of the parties"); *Newell v. Norton*, 70 U.S. 257, 262 (1865) ("Maritime liens are not established by an agreement of the parties . . . . [t]hey are consequences attached by law to certain contracts, and are independent of any agreement between the parties that such liens shall exist.").

[41]     *International Seafoods of Alaska, Inc. v. Park Ventures, Inc.*, 829 F.2d 751, 753 (9th Cir. 1987).

[42]     *See* 46 U.S.C. § 31342.

CIMLA defines "necessaries" as "repairs, supplies, towage, and the use of a dry dock or marine railway," and also provides that:

> (a) The following persons are presumed to have authority to procure necessaries for a vessel:
>> (1) the owner;
>> (2) the master;
>> (3) a person entrusted with the management of the vessel at the port of supply; or
>> (4) an officer or agent appointed by—
>>> (A) the owner;
>>> (B) a charterer;
>>> (C) an owner pro hac vice;
>>> (D) an agreed buyer in possession of the vessel.[43]

## IV.    DISCUSSION

### 1.    O'Rourke's Right to a Lien

The parties do not dispute that O'Rourke has demonstrated the first two elements required for a cognizable maritime lien: It supplied fuel bunkers, which are necessaries, to the COSCO Vessels.  The only question before this Court is whether O'Rourke has shown that it furnished these bunkers "on the order of the owner or a person authorized by the owner"[44] — and, if it has not so demonstrated, whether ING (through assignment of interest from O.W. Far East) holds the lien instead.  This question would be easily answered if the physical supplier of the

---

[43]    *Id.* § 31341.

[44]    *Id.* § 31342.

bunkers — O'Rourke — was in privity with the vessels that received them. However, there is no evidence of a contract between O'Rourke and the COSCO Vessels or their owners.

Two lines of cases address whether a maritime lien may be asserted by a physical supplier of necessaries in this situation: the general contractor/subcontractor line of cases, typified by the Fifth Circuit case *Lake Charles Stevedores, Inc. v. PROFESSOR VLADIMIR POPOV, MV*,[45] and the principal/agent, or middleman line of cases, typified by the Ninth Circuit case *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*.[46]  These lines of cases are not inconsistent with each other, but instead provide different tests for adjudicating claims for maritime liens based on the nature of the relationship between the vessel owner and the intermediary party that procured the bunkers from the physical supplier.  In the general contractor/subcontractor line of cases, courts hold that subcontractors hired by a general contractor to supply necessaries are generally not entitled to assert a lien unless they can show that an entity authorized to bind the vessel controlled the selection of the subcontractor.  In the middleman line of cases, courts hold that physical suppliers in a line of agency relationships can assert

---

[45]     199 F.3d 220 (5th Cir. 1999).

[46]     869 F. 2d 473 (9th Cir. 1988).

a lien against vessels, even though there are numerous intermediaries between supplier and vessel.

In order for a physical supplier in O'Rourke's position to demonstrate that it provided necessaries to a vessel on the order of a person authorized by the owner, it must demonstrate that the intermediary entities that procured the necessaries — in this case, O.W. Far East and O.W. USA — were in an agency relationship with the vessel or owner of the vessel in question.  If such an agency relationship exists, and if the intermediary parties are therefore authorized to bind the vessels to contracts, then the *Marine Fuel Supply* line of cases controls (and O'Rourke prevails).  If no such agency relationship exists, then the *Lake Charles* line of cases controls (and O'Rourke loses).

The record is clear: COSCO did not authorize O.W. Far East to bind the COSCO Vessels or COSCO itself, but instead contracted with O.W. Far East, which subcontracted with O.W. USA, which subcontracted with O'Rourke.  Each step in this supply chain involved a separate contract of purchase and sale; each step was carried out independent of COSCO and the COSCO Vessels.  O.W. Far East even invoiced COSCO for a greater amount than O'Rourke invoiced O.W. USA, further demonstrating that O.W. Far East was operating as a contractor, not an agent.  The parties in the supply chain below COSCO's corporate affiliate,

Chimbusco, are not agents of the Vessel Owners.  The general contractor/subcontractor line of cases therefore applies.

Under the general contractor/subcontractor line of cases, a subcontractor cannot assert a maritime lien unless it can show that the vessel or vessel owner specifically directed that the subcontractor be selected as a physical supplier of necessaries.  The reason for this is simple: Without an agency relationship between the vessel and the general contractor, and without actual or apparent authority on the part of the general contractor to bind the vessel to a specific subcontractor, the subcontractor cannot show that it provided necessaries on the order of the owner or its agent.

No facts, disputed or undisputed, suggest COSCO was in any way involved in the selection of O'Rourke as physical supplier.  COSCO did not direct — indeed, had no involvement whatsoever in selecting — O'Rourke to be its physical supplier of bunkers.  It simply contracted with O.W. Far East for provision of the bunkers, and O.W. Far East independently subcontracted through the remaining steps of the supply chain.  Indeed, the sales order confirmations exchanged between COSCO and O.W. Far East named another supplier entirely — NuStar.  O'Rourke has failed to demonstrate that it provided necessaries to the

COSCO Vessels "on the order of the owner or a person authorized by the owner."[47] As a result, it has no lien against the COSCO Vessels for the value of the fuel provided.

O'Rourke argues that, notwithstanding the nature of the relationship between O'Rourke and COSCO, the fact that the COSCO Vessels' chief engineers signed receipts for the bunkers is sufficient to create a maritime lien. The text of the receipts includes language purporting to create a lien against the vessels until such time as O'Rourke is paid in full for the bunkers it supplies. However, maritime liens are not creatures of contract — they are creatures of law, and solely of law. The mere signature of a receipt alleging the existence of a lien cannot create such a lien if the statutory requirements for the lien are not met.[48]

For the foregoing reasons, O'Rourke's motion for summary judgment must be denied. While O'Rourke is understandably eager to be paid for the fuel it provided, it has no claim against the COSCO Vessels.

### 2.    ING's Right to a Lien

Having determined that O'Rourke does not possess a maritime lien for

---

[47]    46 U.S.C. § 31342.

[48]    *See Valero Mktg. and Supply Co. v. M/V ALMI SUN, IMO No. 9579535*, Civil Action No. 14-2712, 2015 WL 9459971, at *12 (E.D. La. Dec. 2, 2015).

the bunkers it supplied to the COSCO Vessels, I now turn to ING.  ING claims that the undisputed facts before the Court demonstrate that O.W. Far East, as the general contractor that contracted with the COSCO Vessels for the provision of bunkers, possesses a maritime lien for the value of those bunkers — and that ING, as O.W. Far East's assignee of interest, therefore holds the lien.  I agree.

As noted earlier, only O.W. Far East took the order for bunkers from the COSCO Vessels.  Only O.W. Far East, therefore, contracted to supply necessaries to a vessel with an entity authorized to bind the vessel (Chimbusco). The fact that O.W. Far East did not itself deliver the fuel bunkers is immaterial; the party contractually obligated to supply fuel to a vessel is entitled to a maritime lien, despite the fact that it caused another supplier to actually deliver the ordered fuel to the vessel.[49]

## V.  CONCLUSION

For the foregoing reasons, plaintiff's motion is DENIED. It is my conclusion that only ING possesses a maritime lien for the value of the fuel

---

[49]    *See Exxon Corp. v. Central Gulf Lines, Inc.*, 780 F. Supp. 191 (S.D.N.Y. 1991).  *See Also Lake Charles Stevedores*, 199 F.3d at 230 ("Under general contractor cases, the actual deliverer of necessaries often is not entitled to a lien."); *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1245 (11th Cir. 1999) (holding that contract supplier was entitled to lien where "bunkers were supplies pursuant to an agreement . . . irrespective of how, or by whom, the delivery was carried out").

bunkers supplied by O'Rourke.  The Clerk of the Court is ordered to close this
motion (Dkt. No. 24 59).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 8, 2016

**–Appearances–**

**For Plaintiff:**

J. Stephen Simms, Esq.
Simms Showers LLP
201 International Circle, Suite 250
Hunt Valley, MD 21030
(410) 783-5795

**For Defendants:**

Gina M. Venezia, Esq.
James L. Ross, Esq.
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005
(212) 425-1900

**For Third Party Defendant ING Bank:**

Bruce G. Paulsen, Esq.
Brian P. Maloney, Esq.
Seward & Kissel LLP
One Battery Park Plaza
New York, NY 10004
(212) 574-1200